# THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SAMUEL DAVID LEE HARRIS, ) | Case No. 07-1587 |
| ) | |
| Debtor. ) | Chapter 7 |
| _____ ) | |
| ) | |
| MICHELE D. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 08-13 |
| ) | |
| SAMUEL DAVID LEE HARRIS, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Michele Jackson seeks to except two money judgments from the Family Court of Marshall County West Virginia from the Chapter 7 discharge of Samuel David Lee Harris (the "Debtor"). She argues that the judgments are excepted from his discharge under 11 U.S.C. § 523(a)(15) on the grounds that the debts are owed to a former spouse and were incurred by the Debtor in connection with a separation agreement. One judgment was issued on December 28, 2006, in the amount of $12,828.90, and the other was issued on February 10, 2007 in the amount of $9,918.52.

The Debtor moves for summary judgment against Ms. Jackson. He raises three grounds as to why the two judgments are unenforceable against him: (A) Ms. Jackson waived her claims to recover the debts by contract; (B) she lacks "clean hands" to bring her claims; and (C) any amount the Debtor owes to Ms. Jackson is more than offset by the amount she owes to the Debtor. For purposes of summary judgment, the Debtor has not contested that Ms. Jackson otherwise holds debts

of the kind described in 11 U.S.C. § 523(a)(15).

For the reasons stated herein, the court will deny the Debtor's motion for summary judgment.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

The Debtor and Ms. Jackson married in 1988. During their marriage, Ms. Jackson became the stockholder of Town & Country Manufactured Housing Center, Inc. ("Town & Country"), which sold and delivered mobile homes in Ohio and West Virginia. On September 6, 1996, the Debtor and Ms. Jackson divorced. The terms of their separation agreement, which was adopted by their final order of divorce, provided that the Debtor would undertake the following obligations, among others: (1) assume and make payments on $889,000 in indebtedness owed by Town & Country; and (2)

make the payments on a house purchased for $146,000 in Glen Dale, West Virginia in which Ms. Jackson would live. One of Ms. Jackson's obligations under the separation agreement was to turnover her stock ownership in Town & Country to the Debtor.

As alleged by the Debtor, Ms. Jackson refused to timely turnover the Town & Country stock. As a result, when the Debtor attempted to sell Town & Country, he was not able to execute the sale, which purportedly cost him an estimated $650,000 in lost profits and the satisfaction of the $889,000 indebtedness.

Contrary to the Debtor's assertions, while testifying under oath at a April 3, 2000 contempt hearing in Marshall County, Ms. Jackson stated that she turned the stock certificates over to the Debtor on the day of her final divorce – on September 6, 1996. Later, in contradiction to that earlier statement, Ms. Jackson purportedly acknowledged in a February 6, 2004 document titled "Amended Divorce Agreement," that she had retained the stock certificates, canceled the transfer of Town & Country Stock to the Debtor, and then reassigned that stock to herself. Among other things, the "Amended Divorce Agreement" also terminated the Debtor's obligation to pay the mortgage on the Debtor's home in Glen Dale, West Virginia.

In a deposition dated November 8, 2006, however, Ms. Jackson denied ever signing the "Amended Divorce Agreement." She also denied having any contact with the Debtor whatsoever since the time of their divorce in September 1996, and denied ever forging the Debtor's name to Town & Country's stock transfer certificates. According to Ray Fraley, a forensic document examiner hired by the Debtor, Ms. Jackson did indeed forge the Debtor's name to Town & Country's stock transfer certificates on April 11, 1997, and, according to a photocopy of the "Amended Divorce Agreement" of February 6, 2004, he stated that her photocopied signature was authentic.

The report of Ray Fraley and the validity of the "Amended Divorce Agreement" came before the Family Court of Marshall County on December 11, 2006, in connection with petition for contempt filed by the Debtor against Ms. Jackson. The Family Court determined that the "Amended Divorce Agreement" was not enforceable:

> [T]he [Debtor] has not produced the original agreement, the agreement was not executed before a notary public, and therefore there exists no evidence or testimony to support the [Debtor's] position that [Ms. Jackson] signed such an agreement. A photocopy can too easily be altered to be found enforceable, particularly when there exists insufficient evidence of the consideration allegedly received by [Ms. Jackson]

-3-

> in exchange for the agreement, and the best evidence is not available that being the original agreement.

(Document No. 17, Ex. A, p. 6-7).

As a result of the December 11, 2006 hearing, the Family Court entered judgment on December 28, 2006, in favor of Ms. Jackson for $12,518.90, representing payments that Ms. Jackson made to Sky Bank on the deed of trust secured by the house in Glen Dale, West Virginia. The court also invited Ms. Jackson to provide a supplemental judgment order detailing additional sums paid by her that should have been paid by the Debtor under the parties' 1996 separation agreement. Consistent with that instruction, Ms. Jackson detailed tax payments and fire service fees that she had paid dating back to 1996, totaling $9,918.52. On February 10, 2007, the family court entered a supplemental judgment in that amount.

The Debtor appealed the orders of the Family Court, but the Supreme Court of Appeals of West Virginia refused his petition for appeal on February 22, 2008.

### III. DISCUSSION

For purposes of summary judgment, the Debtor is not contesting that the amounts owed to Ms. Jackson under the December 28, 2006 and February 10, 2007 Family Court judgments fall within the 11 U.S.C. § 523(a)(15) exception to discharge for obligations owed to a former spouse under a separation agreement. Instead, the Debtor contends that no amount is owed Ms. Jackson based on: (A) Ms. Jackson's execution of the February 6, 2004 "Amended Divorce Agreement," which contractually waived the Debtor's obligations under the 1996 separation agreement; (B) Ms. Jackson's reported bad acts, which, under the equitable doctrine of "unclean hands," bars her from any recovery on the judgments; and (C) alleged offsets resulting from the claims the Debtor has against Ms. Jackson for her failure to timely turnover the stock certificates to Town & Country.

**A.   Contractual Waiver**

The basis for the Debtor's argument that Ms. Jackson contractually waived the Debtor's obligations under the 1996 separation agreement is that Ms. Jackson signed the "Amended Divorce Agreement" of February 6, 2004, which, *inter alia*, waived the Debtor's obligation to make payments on Ms. Jackson's house in Glen Dale, West Virginia.

At a hearing before the Family Court of Marshall County on December 11, 2006, however,

−4−

the validity of the February 6, 2004 "Amended Divorce Agreement" was put in issue by the parties. Ultimately, the Family Court determined that the document was not valid or enforceable. The decision of the Family Court is final, and the Debtor's petition for review to the Supreme Court of Appeals of West Virginia was denied on February 22, 2008.

The Full Faith and Credit Act, 28 U.S.C. § 1738, "requires federal courts to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (citation omitted); *see also Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006) (same). The preclusive effect of a State court judgment may either be to the particular claims that were asserted, or to the particular issues that were decided by the court. Before a West Virginia State court gives preclusive effect to claims adjudicated by another court, three elements must be satisfied:

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Blake v. Charleston Area Med. Ctr.*, 498 S.E.2d 41 (W. Va. 1997) (Syllabus Pt. 4); *see also Porter v. McPherson*, 479 S.E.2d 668, 676 (W. Va. 1996) ("'Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.'") (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

Related to the doctrine of *res judicata*, or claim preclusion, is the doctrine of collateral estoppel, which is also referred to as issue preclusion. "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." *Conley v. Spillers*, 301 S.E.2d 216 (W. Va. 1983) (Syllabus Pt. 2). Like *res judicata*, collateral estoppel also requires "that the first judgment be rendered on the merits and be a final judgment by a court having competent jurisdiction over the subject matter and the parties." *Id.* at Syllabus Pt. 3. More specifically, an issue is precluded from relitigation when: "(1) The issue

-5-

previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *State v. Miller*, 459 S.E.2d 114 (W. Va. 1995) (Syllabus Pt. 1); *see also Wilson v. Wilson (In re Wilson)*, Nos. 06-5, 06-34, 2007 Bankr. LEXIS 1866 at *10 (Bankr. N.D.W. Va. June 6, 2007) (same).

Here, just like in the Family Court of Marshall County, the validity of the February 6, 2004 "Amended Divorce Agreement" is an issue before the court to be adjudicated. At the December 11, 2006 hearing, the Debtor presented the report of Ray Fraley, a forensic document examiner, which stated that the photocopy of Ms. Jackson's signature on the February 6, 2004 "Amended Divorce Agreement" was in her handwriting. After considering the evidence, which included Ms. Jackson's assertion that she never signed the document, and the facts and circumstances surrounding her alleged signature, the Family Court determined that the February 6, 2004 "Amended Divorce Agreement" was not enforceable. This determination was based on the merits by a court having jurisdiction over the parties, and is final. Both the Debtor and Ms. Jackson were parties to the Family Court action, and were given a full and fair opportunity to litigate the validity of the February 6, 2004 "Amended Divorce Agreement."

Consequently, the Debtor is precluded from relitigating the validity and enforceabilty of the February 6, 2004 "Amended Divorce Agreement" in this court based on the doctrine of collateral estoppel. Therefore, this court finds that there has been no contractual waiver by Ms. Jackson of the amounts owed pursuant to the judgments of the Family Court of Marshall County dated December 28, 2006 and February 10, 2007.

**B.    Unclean Hands**

In the Debtor's view, Ms. Jackson has abused the legal system and engaged in perjury and fraud in her attempts to demand money from the Debtor that she is not entitled to receive. Invoking the doctrine of "unclean hands" the Debtor contends that the court should refuse to recognize her claims against him arising out of their 1996 separation agreement. The Debtor's allegations of wrongdoing include: (1) giving false testimony in connection with a 1997 petition for contempt in an effort to claim $50,000 of a settlement involving a business entity controlled by the Debtor; (2)

failing to complete proof of loss forms for medical insurance purposes, which required the Debtor, not the Debtor's insurance company, to pay for Ms. Jackson's medical bills; (3) filing a petition for contempt for the Debtor's non-payment of Ms. Jackson's children's private school tuition after the Debtor had paid that tuition; (4) failing to timely turnover the stock certificates to Town & Country, forging the Debtor's name on the stock transfer certificates, and then falsely testifying that she had turned over the stock certificates to him, and (5) falsely testifying that she had no contact with the Debtor.

The doctrine of "unclean hands" is equitable in nature, and is based on the "principle that a party cannot seek equitable relief or assert an equitable defense if that party has violated an equitable principle, such as good faith." *Black's Law Dictionary* 268 (8th ed. 2004).  As stated by the Supreme Court of Appeals of West Virginia:

> We have long recognized that, "[t]heir hands may be unclean, but it is the duty of a court of equity to permit them to clean them when it can do so, and not permit such uncleanness to continue as a stench in the nostrils of the people." "Equity never helps those who engage in fraudulent transactions, but leaves them where it finds them." This doctrine has been expressly and specifically made a part of the organic law in this State.
>
> The unclean hands rule is raised only because of conduct connected with the particular transaction sought to have redressed. "Whenever and if it is made to appear to the court that by reason of fraudulent or other unconscionable conduct, the plaintiff has lost his right to invoke a court of equity, the court will, on the motion of a party, or its own motion, wash its hands of the whole."

*Foster v. Foster*, 655 S.E.2d 172, 177 (W. Va. 2007) (citations omitted).

Importantly, the December 28, 2006 and February 10, 2007 judgments that are the subject of Ms. Jackson's adversary complaint concern payments on a note secured by a deed of trust on Ms. Jackson's Glen Dale, West Virginia residence, and amounts owed for property taxes and fire service fees on that residence.  The conduct alleged by the Debtor supporting his unclean hands defense is not related to his non-payment of those support obligations.  The doctrine of unclean hands only concerns fraud or deceit as it relates to the controversy in issue before the court.  *E.g.*, *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945) ("[W]hile 'equity does not demand that its suitors shall have led blameless lives' as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.") (citation omitted);

*Dunlop-McCullen v. Local 1-S*, 149 F.3d 85, 90 (2d Cir. 1998) ("We have held, however, that 'misconduct . . . unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands.'"); *Ciba-Geigy Corp. v. Bolar Pharmaceutical Co.*, 747 F.2d 844, 855 (3d Cir. 1984) (stating that an unclean hands defense "requires a showing by defendant that plaintiff's conduct is inequitable and that it involves the subject matter of the plaintiff's claim."); *Foster*, 655 S.E.2d at 177 (stating that the unclean hands rule must be "connected with the particular transaction sought to have redressed.").

Because the Debtor has not demonstrated to the court that Ms. Jackson acted with unclean hands with respect to obtaining the judgments against him for his non-payment of expenses related to Ms. Jackson's residence, the unclean hands doctrine is not applicable to this proceeding.[1]

**C.    Offsets**

The Debtor argues that this court should eliminate any debt that he owes to Ms. Jackson based on claims that he has against her for her breach of the 1996 separation agreement. More specifically, the Debtor alleges that Ms. Jackson breached the separation agreement by refusing to timely turnover the stock to Town & Country, which caused the Debtor $650,000 in lost sale profits, and required him to continue servicing the $889,000 debt owed by Town & Country. In his motion for summary judgment, the Debtor asserts that he has moved for contempt against Ms. Jackson for these alleged damages, but that the proceeding was stayed by the Family Court based on the Debtor's

---

[1] Paragraph 3(e) of Ms. Jackson's adversary complaint recites that the Debtor is obligated to pay $10,000 in consideration of 100 shares of Town & Country stock, payable within ten years of the 1996 separation agreement. It does not appear that this obligation was the subject of the Family Court judgments of December 28, 2006 and January 10, 2007. In response to summary judgment, however, Ms. Jackson alleges that issues related to the transfer of Town & Country stock were settled by the parties based on earlier litigation in both the Circuit Court of Ohio County West Virginia, Civil Action No. 02-C-285, and in the Federal District Court for the Northern District of West Virginia, Case No. 5:02-CV-8. At this time, it is unclear whether this particular obligation of the separation agreement is the subject of Ms. Jackson's adversary complaint to except debts from the Debtor's discharge. If so, then the court will take up issues at a later time concerning the earlier litigation, and the Debtor's assertion of unclean hands as that assertion relates to his alleged non-payment for Town & Country stock.

bankruptcy filing.[2]

As argued by Ms. Jackson, the Debtor's allegations against her for violating the 1996 separation agreement with respect to her failure to transfer Town & Country stock were included in a 2002 lawsuit filed in the Circuit Court of Ohio County, West Virginia in a case styled, *Samuel L. Harris and Housing Showcase Mobile Homes, Inc., v. David L. Jackson and Michele C. Jackson*, Civil Action No. 02-C-285.  In paragraph 17 of the Circuit Court complaint, the Debtor alleged that Ms. Jackson refused to transfer the stock she held in Town & Country, and, acting in concert with Mr. Jackson, she refused to file the required transfer papers with the Ohio Secretary of State.  The complaint was later dismissed with prejudice by the Ohio County Circuit Court based on an agreed motion filed by the parties.  Similarly, in a case styled *Samuel L. Harris v. David L. Jackson and Michele D. Jackson*, Case No. 5:02-CV-8, filed in the Federal District Court for the Northern District of West Virginia, the Debtor also alleged in paragraph 13 of his complaint that Ms. Jackson refused to file the required transfer papers for Town & Country's stock with the Ohio Secretary of State.  The docket sheet for the federal court action reflects that the parties reached a settlement agreement on the record.

In short, it appears on the record before the court on summary judgment that the Debtor may have already litigated issues related to Ms. Jackson's alleged failure to timely turnover Town & Country's stock certificates.  The court, however, does not have before it any executed copy of a settlement agreement, or the transcript of the agreement reached in open court.[3]  Even if the Debtor has not already litigated issues related to Town & Country's stock transfer, all the Debtor has asserted against Ms. Jackson in his summary judgment papers is a potential claim for damages,

---

[2] The Debtor combined his brief in support of summary judgment with a motion to remove the Family Court petition for contempt to this court.  The court denied the motion to remove because the attempt at removal was untimely under Fed. R. Bankr. P. 9027.

[3] Given the development of the record in the case thus far on this issue, and in the interests of judicial economy, the court strongly encourages one or both parties to obtain evidence, of the terms and scope of the settlement(s), suitable for admission at trial, or to reach a stipulation in that regard.  A final pre-trial conference will be scheduled in this case at which time the court, among other things, will expect to hear a report from the parties on their progress regarding this issue.

which has not yet been adjudicated by the court. The assertion of an offset based on a contingent, unliquidated, and disputed cause of action is not the type of uncontested fact upon which the court may rely in determining the existence of a debt asserted for the purposes of offset.

### IV. CONCLUSION

Based on the reasons set forth above, the court will deny the Debtor's motion for summary judgment. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.